UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-cr-20104-JB

UNITED STATES OF AMERICA,

v.

JAMES SOLAGES,
*et al.*,

    Defendants.
_____/

**ORDER ON AMENDED MOTION TO SUPPRESS COERCED STATEMENTS**

    **THIS CAUSE** comes before the Court on Defendant James Solages ("Solages" or "Defendant")'s Amended[1] Motion to Suppress Coerced Statements, ECF No. [1155], (the "Motion"). The United States of America (the "Government") responded to the Motion, (the "Response"), ECF No. [1160], to which Solages replied, ECF No. [1169]. On October 7, 2025, the Court held an Evidentiary Hearing and Oral Argument on the Motion ("Hearing"). *See* ECF No. [1175]. Upon due consideration of the Motion, the pertinent portions of the record, and for the reasons discussed below, the Motion is **DENIED**.

    **I.**    **BACKGROUND**

    On July 7, 2021, Solages was arrested and detained by Haitian authorities on suspicion of planning and participating in the assassination of the late President of Haiti, Jovenel Moïse. ECF No. [1155] at 3; ECF No. [1160] at 2. Two weeks later,

---

[1] Mr. Solages filed a Motion to Suppress Statements, ECF No. [1033], (the "Original Motion"), but stated on the record at the Hearing that the Amended Motion was intended to replace and not supplement the Original Motion.

1

and while detained, Solages was interviewed on three separate occasions by agents from both the Federal Bureau of Investigations ("FBI"), and the United States Department of Homeland Security ("HSI") (collectively, the "Special Agents"). ECF No. [1155] at 3; ECF No. [1160] at 2. The interviews took place on July 20, July 22, and July 26, 2021 (the "July 2021 Interviews").[2] ECF No. [1160] at 2; s*ee generally* ECF No. [1155] at 3. Each time, Solages was interviewed in a repurposed office at the Haitian Central Directorate of the Judicial Police ("DCPJ"). ECF No. [1160] at 2.

Solages maintains that during his detention in Haiti, Haitian police regularly beat him, threatened his life, and "told him he would never make it out of Haiti alive." ECF No. [1155] at 3. He claims that Haitian authorities broke his left hand, beat him with a metal pipe so hard he had a seizure and still suffers from vertigo, beat him repeatedly in his stomach and genitals, urinated on him, forced him to play "Russian Roulette," and denied him food, water and medication for days on end. *Id*. at 3–4. Solages also maintains that during the July 2021 Interviews, he told the FBI of the torture he was experiencing and that he thought he was going to die. *Id*. at 4.

For its part, the Government denies that Solages informed the Special Agents of any purported mistreatment at the hands of Haitian authorities. The Government also points out that, according to the Special Agents, Solages had no visible injuries,

---

[2] Solages was also interviewed in February 2022, and the Motion challenges the statements that Solages made in those interviews (the "February 2022 Statements"). However, both in its Response, ECF No. [1160], and on the record at the Hearing, the Government has represented that it does not plan to use the February 2022 Statements at trial. ECF No. [1160] at 12. Given that representation, Solages has agreed that his request to suppress the February 2022 Statements is **MOOT**. ECF No. [1169]. The Court therefore does not address the February 2022 Statements.

2

bleeding, or bruising, and he was not otherwise restrained or handcuffed when speaking to the agents. ECF No. [1160] at 2–3. In addition, the Government argues that on each of the July 2021 Interviews, the agents advised Solages of his *Miranda* rights, and presented him with a *Miranda* written waiver. That written waiver, which the Government asserts was also read aloud to Solages, informed him that he had a right to remain silent; that his statements could be used against him; that he had the right to consult an attorney or to have one present with him; and that he could stop the questioning at any time. *See* ECF No. [1200-1]. At the initial interview, the Government maintains that Special Agents invited Solages to sign the *Miranda* waiver and asked him to initial and date each line of the waiver at the beginning of each subsequent interview, which he did. *Id.* The waiver also stated that Solages waived any rights he had "freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." *Id.*

## II. THE INSTANT MOTION

In the Motion, Solages argues that statements made during the July 2021 Interviews (the "July 2021 Statements") should be suppressed because the physical and mental torture he experienced during the time of his interviews renders his statements involuntary. ECF No. [1155] at 3. Solages argues that the totality of the circumstances demonstrates that he was in a weakened state at the time of the July 2021 Statements, and that returning him to the violent custody of Haitian officials was a threat that rose to the level of coercion that the Fifth Amendment is intended to protect against. ECF No. [1169] at 3.

The Government argues that Solages' statements were voluntary, as evidenced by the *Miranda* waiver he signed, and affirmed at the outset of each of the subsequent interviews. ECF No. [1160] at 6. The Government also argues that his claims of torture lack credibility because during the July 2021 Interviews (i) Solages did not mention any abuse to Special Agents, (ii) no physical signs of torture or abuse present, and (iii) the Special Agents did not document any injuries, which is their practice when a detainee has visible injuries, as occurred with one of Solages' co-defendants. *See id*. at 7–8.

### III.   THE HEARING

At the Hearing, the Court heard testimony from two of the Special Agents that conducted the interviews with Solages in July 2021, FBI Special Agents Martin Suarez and Jose Loureiro. Special Agent Suarez was present at all three interviews and confirmed that Solages never appeared to be deprived of sleep or food in any way, nor did he have any visible injuries on his body or complain of any mistreatment. Special Agent Suarez also testified that Solages never informed them of any abuse or torture at any of the three interviews. According to Special Agent Suarez, Solages did not report any of the abusive scenarios now alleged. At best, Special Agent Suarez testified that at one of the interviews, Solages appeared to be coughing, and complained that the jail cell was cramped, hot, and that individuals in the cell were ill. Special Agent Loureiro confirmed that in the one interview he attended, as well as other times he walked in during the other interviews, Solages did not appear to have any physical signs of abuse, nor did he report any torture or abuse.

In addition, the Government introduced photos of another man that was detained and was being interviewed by federal agents, co-defendant German Alejandro Rivera-Garcia. During his interview, the agents noted that Rivera-Garcia had significant bruising on his face and inner thigh and proceeded to photograph those injuries. Special Agent Suarez testified that Solages did not appear to have any injuries, and that if he had seen any he would have photographed them and included them in his report as he did with Mr. Rivera-Garcia.

Solages testified about the conditions of his detention and testified that he was tortured while in Haitian custody. He testified that his arrest was violent and that while detained at the police station, he was repeatedly beaten on his testicles while handcuffed, and was denied food, water, and medication for a preexisting knee injury for days. Solages testified that his hand was broken while in custody, and that he was never properly treated for the injury. He also testified that he was hit in the head with what he described as a metal pipe, suffering a skull fracture that was never treated, and that a member of the DCPJ tactical team urinated on him. Solages further testified that he was forced to play "Russian Roulette" with the detaining officers, and that the detaining officers held a lighter to his testicles and burned them. Solages also stated that he had contracted tuberculosis twice because of the unsanitary conditions in the prison.[3]

---

[3] During cross-examination, Solages was asked about his proficiency in the English language. In his response, Solages waivered, stating that he had a "reasonable understanding" of the English language, before confirming that he was indeed proficient in English and had no issues reading both the twenty-three page National Human Rights Defense Network Report (discussed *infra*) in English or the *Miranda*

5

To corroborate his allegations of torture and abuse, Solages offered a report by the National Human Rights Defense Network (the "Report"), which he believes confirms the details of the torture he endured. *See* ECF No. [1191]. The Report details the arrests made following the assassination of Haitian President Moïse, the subsequent investigation and delays therein, and the conditions of the detained suspects following the arrests. *See generally, id.* Based solely on the author's interviews with the detained suspects, and at times their families and their lawyers, the Report describes the conditions of the suspects' detention as inhumane, degrading and generally lacking in respect for human dignity. *See id*. at 3–4, 12, 15. In particular, the Report includes four paragraphs specifically about Solages' arrest and detention, including how he was beaten in the back of the pick-up truck after his arrest, subjected to "torture and harsh interrogations," spent twenty days in handcuffs, and was pressured to confessing to having murdered President Moïse. *Id*. The Report also noted that Solages was subject to a cell with a "nauseous smell" that was not well ventilated, and that he caught tuberculosis while in prison. *Id.*

IV.   **LEGAL STANDARD**

"Before the government may introduce a suspect's uncounseled statement made during custodial interrogation, it must show that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his

---

waiver he was presented with during the July 2021 Interviews. The Court notes that after the Hearing, Solages filed a declaration confirming his proficiency of the English language and affirmed that he has no difficulty reading, writing or speaking in English and that he has had no difficulty understanding the proceedings, court orders, and communications regarding his defense to date. *See* ECF No. [1213].

6

right to counsel." *United States v. Graham*, 323 F. App'x. 793, 799 (11th Cir. 2009) (citing *United States v. Beale*, 921 F.2d. 1412 (11th Cir. 1991)). In order to do so, the government must first show that "the relinquishment of the right . . . was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Olaniyi*, 796 F. App'x. 601, 604 (11th Cir. 2019) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The Government must prove voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). In order to properly conclude that a defendant waived his *Miranda* rights, the Court must find that "the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension . . . ." *Olaniyi*, 796 F. App'x. at 604.

## V. ANALYSIS

The issue before the Court is whether the conditions of Solages' confinement rendered his *Miranda* waiver and later July 2021 Statements involuntary. Solages argues that he was tortured in the Haitian prison, and as such, his statements were involuntary and should be suppressed. For the reasons stated at the Hearing and below, the Court finds that the July 2021 Statements are not subject to suppression as there is no credible evidence that they were involuntary.

As an initial matter, there is no allegation that his alleged torture was perpetrated by the U.S. government. Instead, Solages advances the argument that

7

the Government knew or should have known that Solages was being tortured as he alleged, and therefore, his statements were not voluntary. The Court finds no evidence to support Solages' position that the Special Agents knew or should have known that he was being tortured by the Haitian prison officials. Special Agents Suarez and Loureiro testified that Solages never appeared with bruises or visible injuries, nor did he complain of any mistreatment. Although Solages testified that he had a broken hand, was hit over the head with a metal pipe, and was repeatedly beaten on his genitals, ECF No. [1252] at 86: 4–18; 87:11–16; 83:1–25; 84:3–15, Special Agents Suarez and Loureiro saw no bruising, no scars, and reported no grimace or pained reactions from Solages despite sitting for long periods of time during his lengthy interviews, each of which lasted several hours. *Id.* at 16:9–25; 67:20–25; 68:1–25; 69:1–2. According to the Special Agents, Solages only once appeared with a cough and informed the agents of the hot, cramped, and unclean conditions of his detention, but never of any physical abuse he endured. *Id.* at 57:7–25; 58:3–8. The Court finds the testimony of Special Agents Suarez and Loureiro to be credible. In contrast, Solages' testimony that he informed the Special Agents of the abuse lacks any credibility.

There is also no evidence that the Special Agents had any reason to know of the torture alleged. Indeed, Special Agents Suarez and Loureiro both testified that on occasions where suspects being interviewed in this case did present with visible injuries or reported abuse, it was their practice to include such in their reports and to take photographs of the injuries. *Id.* at 26:20–23; 67:12–18.

Even assuming that Solages did suffer physical torture or abuse at the hands of Haitian prison officials, that would be insufficient under these facts to find the statements involuntary. In *United States v. Olaniyi*, the defendant challenged the voluntariness of his statements because he was beaten by the Royal Malaysian Police hours before his interview with U.S. law enforcement officials. *Olaniyi*, 796 F. App'x. at 604. The Eleventh Circuit found that the statements were not subject to suppression because the U.S. officials did not participate in the arrest and were unaware of the defendant's alleged beating. *Id*. The Court in *Olaniyi* held that the defendant's confession was not "causally linked" to the Royal Malaysian Police's alleged beating, and therefore, not subject to suppression. *Id*. Here too, the alleged torture Solages endured was at the hands of foreign officials, and there is no evidence that Special Agents Suarez and Loureiro participated in or were aware of the alleged torture.

Finally, at the Hearing, Solages' counsel argued that the United States was on notice of Solages' torture because the Report verified Solages' allegations of abuse. The Court sees no basis to impute the information in the Report to the United States. The Report was not written by, nor is there any evidence that it was provided to, any agency of the United States. There is no evidence that the any official of the United States knew of the Report or would have had reason to know of the Report before the July 2021 Interviews.

Based on the totality of the circumstances surrounding the three July 2021 Interviews, the Court sees no credible evidence to support that Solages' statements

9

were involuntary. Solages read and waived his *Miranda* rights, never stated that he had been tortured in any way during his interviews, nor is there any evidence that the Government knew of, much less participated in or condoned, the alleged torture by Haitian officials.

Accordingly, and for the reasons stated herein, it is hereby **ORDERED AND ADJUDGED** that the Motion, ECF No. [1155], is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 12th day of January, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**