UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20104-CR-BECERRA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTIAN SANON,

Defendant.
_______________________________________/

**DEFENDANT SANON'S MOTION TO STRIKE SURPLUSAGE FROM THE SIXTH SUPERSEDING INDICTMENT UNDER FED. R. CRIM. P. 7(d) AND FOR A BILL OF PARTICULARS UNDER FED. R. CRIM. P. 7(f)**

Defendant Christian Sanon, through undersigned counsel, moves the Court to strike surplusage from the Sixth Superseding Indictment returned on August 27, 2026, or in the alternative to direct that any copy or summary of the indictment provided to the jury omit it; and to direct the Government to file a bill of particulars on six narrow subjects concerning Counts 1, 2 and 3. In support, Mr. Sanon states as follows:

**INTRODUCTION**

Mr. Sanon has been preparing for trial on the Fifth Superseding Indictment (DE 552), which charged him and four others in nine counts with no general allegations. The Sixth Superseding Indictment re-alleges seventy-seven paragraphs of general allegations into every count against him. Many of those paragraphs describe a pandemic-relief loan fraud with which he is not charged. Others add new aliases and argumentative descriptions of him. And Counts 1 and 2, the material-support counts that carry life imprisonment, now list fourteen categories of "material support" where the Fifth listed two, over a conspiracy period that now begins in "June

2020" and extends past the death of President Moïse to add a new object, "the concealment of an escape."

This motion asks for two limited things. First, remove from what the jury sees the allegations that are not relevant to any charge against Mr. Sanon and that invite the jury to convict him for other people's crimes. Second, inform Mr. Sanon which of the newly pleaded forms of support, time periods and acts the Government will attribute to him, so that he can prepare for trial.

## BACKGROUND

The relevant differences between the Fifth and Sixth Superseding Indictments are set out in Mr. Sanon's motion for Omnibus Relief filed contemporaneously and are summarized here only as they bear on this motion.

### Material support

Count 1 of the Fifth Superseding Indictment charged a conspiracy to provide "personnel, including themselves, and services." Counts 1 and 2 of the Sixth charge conspiring to provide, and providing, "and conceal[ing] and disguis[ing] the nature, location, source, and ownership of," material support consisting of "property, services, financial services, lodging, training, expert advice and assistance, safehouses, false documentation and identification, communications equipment, facilities, weapons, lethal substances, personnel including themselves, and transportation."

### Time period and objects

The Fifth alleged a conspiracy "[b]eginning in or around February of 2021, and continuing through on or about July 7, 2021." Counts 1 through 3 of the Sixth allege a conspiracy "[b]eginning in or around June 2020, and continuing through on or about July 31, 2021," and Counts 1 and 2 add support intended for use in "the concealment of an escape from the commission of" the §

956(a)(1) conspiracy. The Government's criminal complaint against Mr. Sanon placed the start of his alleged involvement at April 1, 2021 [DE 3].

**Count 3**

Count 3 alleges a § 956(a)(1) conspiracy among persons "at least one of whom having been within the jurisdiction of the United States," and alleges that "one or more conspirators did commit one or more acts within the jurisdiction of the United States." It does not identify the conspirator or the act.

**Pandemic-relief fraud allegations**

Paragraphs 6 through 16 describe the CARES Act, the Paycheck Protection Program (PPP) and Economic Injury Disaster Loans (EIDL), and define "PPP and EIDL brokers" and "PPP and EIDL borrowers" as individuals who "fraudulently obtained and used" or assisted in "fraudulently obtaining and using" loan proceeds. Paragraphs 18 and 25 allege that the CTU companies and the Worldwide Group, "utilizing PPP and EIDL loan proceeds," provided for the Colombian nationals. Paragraphs 37, 67, 68, 75 and 76 describe other defendants as having "operated as a PPP and EIDL borrower and broker" or as a "PPP and EIDL broker." Paragraphs 63 through 65 describe three defendants (Simmons, Williamson and Nave) whose only alleged role is as PPP and EIDL borrowers or brokers. These allegations support new Count 4 (conspiracy to commit bank and wire fraud, 18 U.S.C. § 1349) and Count 5 (money laundering conspiracy, 18 U.S.C. § 1956(h)). Mr. Sanon is not charged in Count 4 or Count 5, and no paragraph alleges that he applied for, brokered, received or knew the source of any PPP or EIDL loan.

**New aliases and characterizations**

The Fifth indictment identified Mr. Sanon as "a/k/a 'Kumbe,' a/k/a 'Pumba,' a/k/a 'Bubba.'" The Sixth adds "a/k/a 'Mr. President,' a/k/a 'P'" (¶ 36 and forfeiture ¶¶ 7–8), and ¶ 36 newly describes him as "a purported pastor and medical doctor."

## ARGUMENT

### I. The Court should strike the surplusage, or at minimum keep it from the jury

Rule 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). In this Circuit, a motion to strike surplusage should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial," which is "a most 'exacting standard.'" The allegations challenged here meet that standard. *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990)).

Mr. Sanon acknowledges that *Awan* also holds that a court may reserve ruling until it has heard the evidence that will establish relevance. *Id.* But *Awan* approved that approach because, while the ruling was pending, the district court "carefully prevented the jury from being prejudiced by the challenged allegations" by giving the jury only a summary of the indictment that omitted them. *Id.* Mr. Sanon asks for, at minimum, the same protection here.

#### A. The pandemic-relief fraud allegations (¶¶ 6–16, 63–65, and the PPP/EIDL language in ¶¶ 18, 25, 37, 67, 68, 75 and 76)

These allegations are relevant only to Counts 4 and 5, in which Mr. Sanon is not charged. Nothing in them alleges that Mr. Sanon had any role in, or knowledge of, any loan application, loan proceeds or broker. The elements of Counts 1, 2 and 3 do not turn on where CTU or the

Worldwide Group obtained their money. To the extent the Government contends that the financing of the Colombian nationals is relevant to the counts against Mr. Sanon, it can prove that CTU and the Worldwide Group spent money without telling the jury, through the charging document itself, that the money was stolen from a federal pandemic-relief program by other people.

The prejudice is clear: reading to the jury as part of the indictment against Mr. Sanon, eleven paragraphs of fraud background and repeated references to "fraudulently obtained" federal relief funds would invite the jury to regard him as part of a broader criminal enterprise that no count charges him with joining, and to infer guilt on the counts that are charged from crimes committed by others. That is the kind of allegation Rule 7(d) exists to remove.

Mr. Sanon therefore asks the Court to strike ¶¶ 6 through 16 and ¶¶ 63 through 65, and the phrases "utilizing PPP and EIDL loan proceeds" (¶¶ 18, 25) and the descriptions of other defendants as PPP and EIDL borrowers or brokers (¶¶ 37, 67, 68, 75, 76), from the counts re-alleged against him, or in the alternative to order that any indictment or summary provided to the jury at his trial omit them.

**B. The aliases "Mr. President" and "P"**

The Fifth Superseding Indictment, on which the Government prepared for trial for more than two years, did not allege these aliases. An alias belongs in an indictment only if the evidence will show that the defendant was known by it and that the name matters to proof of the charges. Absent that showing, the label "Mr. President" does more than identify Mr. Sanon, in a trial about the killing of the President of Haiti, it tells the jury, before any evidence is heard, that Mr. Sanon cast himself as the replacement. That is argument, not a name.

Mr. Sanon asks the Court to strike "a/k/a 'Mr. President,' a/k/a 'P'" from ¶ 36, forfeiture ¶¶ 7 and 8 and every other place they appear, unless the Government proffers before trial the specific

evidence it intends to offer showing that Mr. Sanon was known by these names in communications relevant to the charges. If the Court prefers to reserve ruling under *Awan*, Mr. Sanon asks that the aliases be omitted from any copy or summary of the indictment given to the jury until the Court rules.

**C. "Purported pastor and medical doctor"**

Paragraph 36 describes Mr. Sanon as "a purported pastor and medical doctor." The word "purported" is not a fact; it is the Government's characterization, implying that Mr. Sanon falsely held himself out. Whether he is a pastor or a physician is not an element of any charged offense, and the insinuation that he is a fraud is inflammatory. Mr. Sanon asks the Court to strike the word "purported" or, in the alternative, the clause.

**D. The uncharged statute, 50 U.S.C. § 4819**

The caption and forfeiture ¶ 6 refer to a § 4819 violation "as alleged in this Sixth Superseding Indictment in Count 6." No count alleges one. Count 6 charges a § 371 conspiracy to violate 18 U.S.C. § 960. References to an export-control offense that the grand jury did not charge are, by definition, not relevant to any charge, and they would tell the jury that Mr. Sanon faces an additional federal crime. The Court should strike "50 U.S.C. § 4819" from the caption, forfeiture ¶ 6 in its entirety, and the reference to "Title 50, United States Code, Section 4819" in the concluding forfeiture paragraph.

**II. The Court should direct a bill of particulars on five narrow subjects**

Rule 7(f) provides that "[t]he court may direct the government to file a bill of particulars," and that a defendant "may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The Eleventh Circuit has explained that the purpose of a bill of particulars is "to inform the defendant of the charge against him with

sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)). A bill of particulars "supplements an indictment by providing the defendant with information necessary for trial preparation," although "[g]eneralized discovery" is not its proper function. *Id.*

Mr. Sanon seeks to know which parts of a newly expanded charge the Government will attribute to him, for three reasons. First, the change comes on the eve of trial: the Sixth Superseding Indictment was returned thirty-two days before the September 28 trial date. However, it was not disclosed to the defense until a week before trial. Second, the indictment now charges twenty-seven named defendants and at least four others whose paragraphs are redacted from the defense copy, so that a list of fourteen forms of support over a fourteen-month period does not tell Mr. Sanon what he personally is said to have done. Third, the Government has now shifted their theory of their case in the eleventh hour. Mr. Sanon needs to know which of which of the newly pleaded theories the Government will pursue against him.

Mr. Sanon requests that the Government be directed to state:

1. Forms of support attributed to Mr. Sanon (Counts 1 and 2)- Which of the fourteen categories of material support listed in Counts 1 and 2 (property, services, financial services, lodging, training, expert advice and assistance, safehouses, false documentation and identification, communications equipment, facilities, weapons, lethal substances, personnel including himself, and transportation) the Government contends Mr. Sanon provided, agreed to provide, or concealed and disguised, and, for each, the approximate date and the person or group to whom it was provided.

2. Date of joining (Counts 1 through 3)- The approximate date on which the Government contends Mr. Sanon joined each of the conspiracies charged in Counts 1 through 3, and whether the Government contends that Mr. Sanon engaged in any act in furtherance of those conspiracies before February 2021.
3. The "concealment of an escape" object (Counts 1 and 2)- Whether the Government contends that Mr. Sanon provided, agreed to provide, or concealed any material support intended for use in "the concealment of an escape from the commission of" the § 956(a)(1) conspiracy, and, if so, the support, the approximate date and the persons involved.
4. Post-July 7, 2021 conduct (Counts 1 through 3)- Each act or statement by Mr. Sanon after July 7, 2021 that the Government contends was in furtherance of any of the conspiracies charged in Counts 1 through 3.
5. The jurisdictional element (Count 3)- The conspirator or conspirators whom the Government contends were "within the jurisdiction of the United States," and the act or acts that the Government contends were committed "within the jurisdiction of the United States, to effect the purpose and object of the conspiracy," including the approximate date and place of each.
6. The date of the planned “Coup d’Etat” mentioned throughout the indictment.

Each request is tied to language the grand jury added in the Sixth Superseding Indictment. Without the answers, Mr. Sanon must prepare to meet every form of support, over every month from June 2020 through July 2021, on behalf of every one of more than thirty alleged participants. That is the unfair surprise that Rule 7(f) is meant to prevent.

Pursuant to Local Rule 88.9, the undersigned has contacted AUSA Sean McLaughlin, who has advised that they oppose this motion.

WHEREFORE, the Defendant, CHRISTIAN SANON, respectfully request that this Honorable Court grant this Motion and for all other and further relief deemed just and appropriate.

Respectfully submitted,

BOZANIC LAW, P.A.
101 NE 3rd Avenue
Suite 1500
Ft. Lauderdale, FL 33301
Telephone: 954.920.9750
E-Mail: info@bozaniclaw.com

HUMBERTO R. DOMINGUEZ, P.A.
9100 S. Dadeland Blvd.
Suite 1500
Miami, FL 33156
Telephone: 305.373.6400
E-Mail: bert@hdominguezlaw.com

*/s/Zeljka Bozanic*
By:____________________________
Zeljka Bozanic
Florida Bar No. 23707

*/s/Humberto R. Dominguez*
By:____________________________
Humberto R. Dominguez
Florida Bar No. 837903

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY certify that on September 22, 2026, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

*/s/Zeljka Bozanic*
By:____________________________
Zeljka Bozanic
Florida Bar No. 23707