UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20104-CR-BECERRA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTIAN SANON,

Defendant.
_________________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO REQUIRE THE GOVERNMENT TO PROCEED ON THE FIFTH SUPERSEDING INDICTMENT OR, IN THE ALTERNATIVE, TO CONTINUE TRIAL [DE 1891]**

Defendant Christian Sanon, through undersigned counsel, replies to the Government's response in opposition [DE 1906], even though the Government's response was filed beyond the 24-hour time limit set by the Court on September 15, 2026. The response rests on a single proposition, repeated on nearly every page: that Mr. Sanon "is facing the same charges, the same evidence, and the same core theory of the case that the Government has always advanced," and that "nothing needs to change in Sanon's preparation for trial because nothing of significance has shifted in the Government's case." DE 1906 at 1, 6. Mr. Sanon takes the Government at its word, and asks the Court to hold it there. If the case is unchanged, the Government can be held to the charging document it says it is not relying on and to the representations it has now made in writing. But the response also leaves the largest change in the Sixth Superseding Indictment unmentioned, and it misstates two of its own authorities. In support, Mr. Sanon states as follows:

## ARGUMENT

### I. The Government Has Now Elected, and the Court Should Hold It to the Election and to the Representations that Accompanied It

Mr. Sanon does not dispute the general rule the Government states in Part I of its response. The Court need not resolve the question in any event, because the Government has now made the election in writing: “Now, as the Government elects to proceed on the Sixth Superseding Indictment, it will still present the same theory and evidence.” DE 1906 at 6. That sentence, and the ones around it, are what Mr. Sanon asks the Court to convert into an order.

The Government has told this Court the following, in a filing signed by three Assistant United States Attorneys:

(a) “This factual theory, and all the pre-existing evidence to prove it, would have been the same in the world in which the Government tried Sanon on the Fifth Superseding Indictment.” DE 1906 at 6.

(b) Counts 8 through 10 of the Sixth Superseding Indictment “are unchanged from Counts 6, 8, and 9 of the Fifth Superseding Indictment.” DE 1906 at 10.

(c) “The Government will hew to the same limits on presenting financial evidence that the Court established at the prior trial.” DE 1906 at 11.

(d) “The Government will not argue or present financial analyst testimony that Sanon's co-conspirators like Rainer or Israel procured funds for the coup through fraud.” DE 1906 at 11.

(e) Cooperating witnesses Israel and Harricharan “will not (and cannot) assert that Sanon personally participated in” laundering funds. DE 1906 at 11.

(f) “[T]he jury will receive a redacted version of the indictment, reflecting only the charges against Sanon.” DE 1906 at 11.

Mr. Sanon accepts each of these representations and asks that they be made binding. A representation that resolves a pretrial motion should not become negotiable once the jury is seated.

Specifically, and because the Government says Counts 8 through 10 are “unchanged,” the seventy-seven paragraphs of general allegations that the Sixth Superseding Indictment incorporates into those counts are by the Government's own account surplus as to them, and should be stricken from Counts 8 through 10. The Government cannot describe those paragraphs as changing nothing and simultaneously re-allege them into counts it concedes are unchanged. Mr. Sanon has separately moved to dismiss Counts 6 through 10 as barred by the statute of limitations and has asked in the alternative that the incorporated general allegations be stricken from those counts [DE 1938]. The concession at page 10 of the Government's response bears directly on that motion, and Mr. Sanon respectfully asks that the two be considered together.

## II. The Response Does Not Address the Largest Change the Sixth Superseding Indictment Made

The Government's response walks through the differences “identified by Sanon” and answers each. DE 1906 at 4. It says nothing about the following: Count 4 of the Fifth Superseding Indictment charged a conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 960 and alleged exactly one overt act: that on April 4, 2021, Joseph Joel John travelled from Haiti to the Southern District of Florida to meet with co-conspirators. Count 6 of the Sixth Superseding Indictment charges the same statute over the same period and alleges ten overt acts. Nine of them are new, and Mr. Sanon is now the only defendant charged in that count.

The nine new overt acts are not details about the April 4th meeting. They are separate transactions on separate dates: a $175,000 line of credit extended by Worldwide Capital Lending Group to CTU on April 30, 2021; a Consultant Agreement on May 17, 2021; a flight carrying ballistic vests on May 21, 2021; a $9,145.00 payment on June 2, 2021 funding the travel of approximately eighteen Colombian nationals with military training; a $15,000 wire on June 3, 2021 funding the acquisition of ammunition; the June 10, 2021 export; a June 28, 2021 flight to

deliver a purported Haitian immunity agreement; a July 1, 2021 return to Haiti; and, as overt act 12, the July 7, 2021 convoy of vehicles that carried the men who killed President Moise to his residence. The Government has moved the assassination itself into a § 371 count whose sole overt act, a week ago, was a meeting in Florida three months earlier. Incredibly after the Government verified to the Court on October 7, 2025 that the May transport of the vest was not at issue, they have now added it as an overt act. (*See Daubert Transcript*).

That omission matters because it is the precise feature on which the Government's lead authority turned. In *United States v. Petit*, 841 F.2d 1546 (11th Cir. 1988), the superseding indictment "amended the original indictment in only two respects," and the Eleventh Circuit affirmed the denial of a continuance because "the original indictment provided the correct dates for all of the overt acts alleged to have been committed in furtherance of the conspiracy" and because "the overt acts charged gave the defendants notice of the dates of their alleged misconduct." *Id.* at 1554-55. The overt acts in *Petit* did not change. They are what changed here. *United States v. Brantley*, 68 F.3d 1283 (11th Cir. 1995), is further still from this case: the second superseding indictment there altered one count by adding an interstate-commerce element and changing a statutory reference, and the defendant "fail[ed] to identify any deficiencies in his trial preparation." *Id.* at 1288-89. Both decisions affirmed discretionary rulings under an abuse-of-discretion standard. Neither holds that a continuance must be denied; each holds that a denial was not reversible on the record presented.

### III. Watkins Asks a Defendant to Identify the Prejudice- Mr. Sanon Identifies It Here

The Government quotes *United States v. Watkins*, 811 F.2d 1408 (11th Cir. 1987), for the proposition that "it is incumbent on the defendant to bring that prejudice to the attention of the trial court." DE 1906 at 4. That is the holding, and it is why *Watkins* came out as it did. The Eleventh

Circuit expressly declined to decide whether the change in that case was substantial enough to require additional preparation time: "We need not decide this question, however, because appellants never notified the trial court that their ability to prepare for trial was impaired by the superseding indictment. According to the record before us, appellants never said they were unready for trial or moved for a continuance, or otherwise objected to going forward with the trial when their case was called." 811 F.2d at 1411. Mr. Sanon did the opposite. He moved, in writing, before trial. What follows is the specific preparatory work that the Sixth Superseding Indictment and the Government's recent productions have compelled counsel to leave undone.

(a) The nine new overt acts in Count 6. Three of them allege financial transactions — the $175,000 line of credit, the $9,145.00 travel payment and the $15,000 ammunition wire — that have never before been charged as overt acts of any count against Mr. Sanon. Meeting them requires obtaining and reviewing the underlying bank records, the Worldwide and CTU agreements, and the transactional record of payments by a person who is not on trial with him. Counsel has not done that work because until August 27, 2026 there was no charge that required it.

(b) Overt act 12, the July 7, 2021 convoy. Preparing to meet an allegation that the assassination is an overt act of the § 371 count is different work from preparing to meet an allegation that a co-conspirator flew to Florida on April 4, 2021.

(c) The two witnesses added on September 22, 2026 [DE 1905] — an official of the New Jersey Attorney General's Office and the Executive Director of the Educational Commission for Foreign Medical Graduates. Counsel has received no report, no interview memorandum and no summary of expected testimony for either.

(d) The medical licensing records produced on September 16, 2026 and the sixteen files of ECFMG records, including a 264-page archived paper file, certified on September 22, 2026. Both are the subject of pending motions to exclude.

(e) The paragraphs of the Sixth Superseding Indictment that remain redacted on the copy produced to the defense, each of which is re-alleged into every count Mr. Sanon faces.

(f) The arraignment. The Sixth Superseding Indictment was returned on August 27, 2026. Mr. Sanon was not brought before the Court on it until September 21, 2026 — twenty-five days later, seven days before trial — though he has been in the custody of the United States throughout these proceedings, at the federal detention facility across the street from this courthouse.

(g) The May transport of the personal vest, which the Government represented to the Court on October 7, 2025, was not at issue. *See Daubert Transc 4:9-11.*

> THE COURT: So the issue of them carrying those in May is not at issue?
>
> MS. ELLEN RIEDER: Correct.

(h) The Government's witness list has been amended twice since it was filed as "final." On August 20, 2026 the Government filed its "Final Trial Witness List" [DE 1834], identifying fifty-seven witnesses. On September 9, 2026 it filed an updated list [DE 1868], again identifying fifty-seven; the only substantive change was the substitution of Special Agent (Retired) Sherie Rebollo for Special Agent and Digital Forensic Examiner Sophak Thach, together with the correction of a typographical error in the entry for CFA (Former) Todd Ashley. On September 22, 2026, six days before trial, it filed a third list, again titled "Final" [DE 1905], identifying fifty-eight: it dropped Paul Richardson and added, as witnesses 53 and 54, Howard Pine of the New Jersey Attorney General's Office, Division of Consumer

Affairs, and Kara Oleyn, Executive Director of ECFMG. Neither had appeared on any prior list, and each addition matches a production the Government made in the same week.

(i) The Government's exhibit list has grown by thirteen exhibits since August 20, 2026. Its updated list of September 9, 2026 [DE 1867] added eight exhibits that were not on the August list: a redacted Jacob Israel notebook (GX 60B-5); a summary exhibit for a Bank of America account of Mr. Sanon (GX 82A); certified Wells Fargo account records for Jacob Israel for May and June 2021 (GX 91D); certified telephone subscriber records for four additional devices (GX 122C, 123C, 133C and 135C); and transcriptions and translations of the contents of a further device (GX 134C). A ninth entry, GX 55, is the renumbering of GX 55A.

(j) The final exhibit list, filed September 22, 2026 [DE 1904], added five more exhibits, four of which concern Mr. Sanon's education and medical credentials and none of which appears anywhere on the August or September 9 lists: Christian Sanon Certified ECFMG Records (GX 4E-7); Christian Sanon Certified Dominican Republic UTESA Records and Translation (GX 4E-8); Christian Sanon Certified Haiti Medical License Records and Translation (GX 4E-9); Christian Sanon Certified Medgar Evers College Records (GX 4H); and a Trial Stipulation (GX 166).

These four credential exhibits are not a refinement of an existing theory. They are a new body of proof, drawn from three countries, disclosed six days before jury selection. Two of them require translation from Spanish and French. One of them, GX 4E-8, consists of certified records from Universidad Tecnológica de Santiago in the Dominican Republic — a school that is not the school Mr. Sanon's own ECFMG credential file records him as having attended, and one of the three Dominican medical schools named in the 1987 ECFMG authenticity inquiry described in the

paper file the Government certified on September 22, 2026. [Counsel: confirm the UTESA point against GX 4E-8 before filing.] Counsel cannot obtain a competing record from a Dominican or Haitian ministry, retain a translator, and prepare a cross-examination of the ECFMG Executive Director in the days remaining. This is the "important preparatory work" that *Hawkins* and *Petit* ask a defendant to identify.

The Government characterizes Mr. Sanon's showing as "vague and general." DE 1906 at 3. The foregoing is neither. In *Petit* and *Brantley* the defendants pointed to nothing. Here counsel has identified each item, by date, and has filed separate motions addressed to most of them.

## IV. Two of the Government's Authorities Do Not Support the Propositions for Which They are Cited

The Government argues that evidence post-dating July 7, 2021 was always fair game because "[w]hen the terminology 'on or about' is used" in an indictment, "the court may permit proof of occurrences within as much as several weeks of the date stated," citing *United States v. Milisci*, 465 F.2d 700, 703 (5th Cir. 1972). DE 1906 at 8. That is a quotation of a ground the Fifth Circuit declined to adopt. The full sentence reads: "We do not place this on the basis that the principle that when the terminology 'on or about' is used the court may permit proof of occurrences within as much as 'several weeks' of the date stated, cf. *Kokotan v. United States* . . . and *United States v. Antonelli* . . . , but rather on the fact that the existence of a conspiracy on or about February 11th may be proved by showing the actions of the person who later perfected the conspiracy leading up to the date on which the conspiracy was actually formed." 465 F.2d at 703 (emphasis added). *Milisci* also concerned evidence that pre-dated the charged start of a conspiracy and was offered to show how that conspiracy came to be formed. It says nothing about evidence post-dating the charged end, which is what the Government seeks to use here.

*Rojas-Contreras*. The Government tells the Court that *United States v. Rojas-Contreras*, 474 U.S. 231 (1985), "does not help" Mr. Sanon, and that it "explained that the defendant's only potential remedy from a late-breaking superseding indictment is a continuance of his trial." DE 1906 at 3. Mr. Sanon agrees with the second half of that sentence. It is why his motion asks, in the alternative, for a continuance. The Government cannot invoke *Rojas-Contreras* to establish that the continuance is the remedy and then argue in the next section that the remedy should be withheld. As *Petit* put it, quoting the same case, "the Act itself places broad discretion in the District Court to grant a continuance when necessary to allow further preparation." 841 F.2d at 1554.

**V. The Response Describes a Theory the Sixth Superseding Indictment Does Not Allege**

The Government's response states that "Sanon recruited and gathered the group of conspirators who ultimately arranged President Moise's assassination" and that he "enlisted those individuals to provide material support." DE 1906 at 5. The Sixth Superseding Indictment alleges something different. It alleges that the CTU companies and the Worldwide Group, "utilizing PPP and EIDL loan proceeds," and "[i]n exchange for future infrastructure and security contracts," "recruited, hired, and otherwise materially provided for Colombian mercenaries," and it describes each Colombian national as "operating at the direction of the CTU and Worldwide Group companies." The charging document says the companies recruited and directed. The response says Mr. Sanon did. The Government's earlier motion [DE 1859] says he "hired former Colombian military soldiers" and "solicited co-conspirators to fund the coup," while the response now says the funding came from Veintemilla, Rainer, Israel and Harricharan and that the Government "will not argue" that Mr. Sanon took part in obtaining it. DE 1906 at 11.

Mr. Sanon does not suggest the Government may not refine its case. He says only that a defendant who cannot tell, six days before jury selection, whether he is alleged to have recruited the mercenaries or to have been supplied with them by companies acting for their own commercial reasons is a defendant who cannot finish preparing a defense. That is the prejudice, stated as specifically as the record permits.

**VI. Redacting the Jury's Copy Does Not Answer the Problem**

The Government responds to the redactions by observing that the redacted allegations "would be redacted from the copy of the indictment provided to the jury during deliberations" and so "have no bearing on Sanon's preparation." DE 1906 at 12. That answers a question Mr. Sanon did not ask. The difficulty is not what the jury will read at the end of the case; it is what counsel can read now. Paragraphs 1 through 77 are "re-alleged and incorporated fully" into every count Mr. Sanon faces, and some of them are illegible to the lawyers who must defend against the counts that incorporate them.

**VII. The Government's Scheduling Concern is a Reason To Decide This Now, Not to Deny It**

The Government closes by observing that a thirty-day continuance would push a six-to-eight week trial "into the holiday time period." DE 1906 at 12. Mr. Sanon has been in custody throughout these proceedings and has no interest in delay. He does not object to a schedule that accommodates the Court's calendar and the jurors', and if thirty days produces an inconvenient trial period, the answer is a date the Court finds workable rather than a trial on a charging instrument counsel has had for four weeks. The calendar difficulty the Government describes is a consequence of the Government's decision to supersede thirty-two days before trial, on evidence it does not claim was unavailable to it earlier.

**WHEREFORE,** the Defendant, CHRISTIAN SANON, respectfully requests that this Honorable Court grant the relief sought in DE 1891; enter an order holding the Government to the representations set out in Part I above; strike the general allegations of the Sixth Superseding Indictment from Counts 8 through 10; and grant all other and further relief deemed just and appropriate.

Respectfully submitted,

BOZANIC LAW, P.A.
101 NE 3rd Avenue
Suite 1500
Ft. Lauderdale, FL 33301
Telephone: 954.920.9750
E-Mail: info@bozaniclaw.com

HUMBERTO R. DOMINGUEZ, P.A.
9100 S. Dadeland Blvd.
Suite 1500
Miami, FL 33156
Telephone: 305.373.6400
E-Mail: bert@hdominguezlaw.com

By: */s/Zeljka Bozanic*
Zeljka Bozanic
Florida Bar No. 23707

By: */s/Humberto R. Dominguez*
Humberto R. Dominguez
Florida Bar No. 837903

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 23, 2026, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

By: */s/Zeljka Bozanic*
Zeljka Bozanic
Florida Bar No. 23707