UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20104-BECERRA(s)(s)(s)(s)(s)(s)

UNITED STATES OF AMERICA

v.

CHRISTIAN SANON,

Defendant.
_________________________________/

# UNITED STATES' TRIAL MEMORANDUM CONCERNING PROPOSED JURY INSTRUCTIONS (DE 1890)

The United States submits this trial memorandum ahead of the charge conference. The Court should use the jury instructions proposed by the Government and should reject those proposed by Defendant Christian Sanon. Part I of this memorandum will discuss the Government proposals to which Sanon objects and show why those instructions are appropriate, while Part II will explain the legal or factual errors in the defense proposals to which the Government objects. This memorandum cites the page number of the proposed instructions filed on CM/ECF (DE 1890). The pagination of the editable document, provided to the Court, is three less than the cited number (for instance, DE 1890:20 is page 17 of the Word version of the instructions).

## ARGUMENT

### I. The Court Should Overrule the Defendant's Objections to the Government's Proposed Instructions.

#### A. Sixth Superseding Indictment Additions to Counts 1 & 2 (DE 1890:20-25)

The Government has revised the instructions for Counts 1 and 2 to reflect the more specific language included in the Sixth Superseding Indictment, such as: (a) adding "conceal[ing]" or "disguis[ing] the nature, location, source, and ownership of material support or resources;" (b) adding "the concealment of an escape from" a kill-or-kidnap conspiracy; and (c) defining the term

"conceal" based on 11th Circuit Pattern Jury Instruction O2 (*id.*). All of these additions faithfully reflect the language in the Sixth Superseding Indictment (DE 1850), the operative charging document. The Court has ruled that the Government may properly try Sanon on the Sixth Superseding Indictment (DE 1993) and, thus, it is appropriate to modify the Count 1 and 2 instructions to mirror the charging document.

**B. Mens Rea for Count 1 Conspiracy (DE 1890:21)**

The Government's proposed instruction states: "The Defendant voluntarily joined in the plan, knowing or intending that the material support or resources would be used" in service of a conspiracy to kidnap or kill (*id.*). The Government's proposal mirrors the instructions that the Court gave during the May 2026 trial (DE 1666:17-18). The Defense's counterproposal states: "The Defendant knew the unlawful purpose of the plan and willfully joined in it, knowing or intending that the material support or resources would be used" in service of a conspiracy to kidnap or kill (DE 1890:21). But the difference in language makes no practical difference in this context.

The Government's proposal ("voluntarily joined") better tracks the text of 18 U.S.C. § 2339A, which does not contain the word "willful," and is consistent with other model conspiracy instructions in the 11th Circuit. *See, e.g.*, 11th Circuit Pattern Instruction O74.5 ("[T]he Defendant knew about the plan's unlawful purpose and voluntarily joined in it.").

To be sure, other conspiracy instructions do include the "willfully joined" phrasing proposed by the defense. *See, e.g.*, 11th Circuit Pattern Instruction O11.1.[1] The difference

[1] Even in those cases, the term "willful" does not mean awareness of illegality. Ignorance of the law is a defense only to cases with the heightened willfulness requirement found in complex regulatory crimes, like tax offenses. *See Cheek v. United States*, 498 U.S. 192, 201 (1991). Conspiracy offenses do not, as a general matter, require intentionally violating a known legal duty. *See, e.g.*, *United States v. Stockheimer*, 157 F.3d 1082, 1088 (7th Cir. 1998) ("[A] defendant's belief in the legality of his conduct is not a defense to mail or bank fraud [conspiracy]. A good faith misunderstanding of the Internal Revenue Code would be a defense if the defendants were

between those pattern instructions and this case is that, here, both parties' proposals already include the dependent clause: "knowing and intending that the material support and resources would be used" in service of a conspiracy to kidnap or kill (DE 1890:21). That additional intent requirement renders the word "willful" in the defense proposal redundant. Anyone who knows and intends that material support and resources be used to prepare for, carry out, or conceal an 18 U.S.C. § 956(a) conspiracy to kidnap or kill a person necessarily acts willfully.

In sum, the defense proposal is unnecessarily complicated and injects a "willful" term already substantially covered by the following dependent clause.

**C. Definition of "Material Support or Resources" (DE 1890:21-22, 23-24)**

The Government's proposed definition of "material support and resources" is identical to the Court's instructions from the May 2026 trial (DE 1666:18, 21-22). It also mirrors the charging language of the Sixth Superseding Indictment (DE 1850). Sanon's proposal regurgitates the language of the older, Fifth Superseding Indictment—"any personnel, including themselves, or services" (DE 1890:22, 27)—but fails to clarify what types of services could qualify as material support and resources. Notably, when the Court defined "material support and resources" for the jury in the May 2026 trial, which proceeded on the Fifth Superseding Indictment, the Court used the same list in the Government's proposal.

As it did in the May 2026 trial, this instruction provides essential guidance to the jury when analyzing the complex, months-long scheme charged here, which involved a wide array of material support and resources. During the scheme, Sanon enlisted dozens of individuals to provide material support to the conspiracy to kidnap or kill President Moise, and Sanon himself provided

---

accused of tax evasion, but tax cases are an exception to the traditional rule that ignorance of the law is no excuse." (citation modified)).

material support, including services as varied as (among other things) (a) their own participation as personnel in the scheme; (b) financial fundraising, mostly from recipients of pandemic-era government loans; (c) arranging travel to Haiti and lodging for Sanon, Sanon's supporters (like Antonio Intriago and James Solages), and two dozen Colombian mercenaries, (d) searching for and obtaining an arsenal of weapons, ammunition, and ballistic vests, and (e) training and tactical planning, culminating in the dead-of-night operation coordinated by Sanon's allies to storm President Moise's home and kill him on July 7, 2021.

The Government's proposal faithfully adheres to the statutory definition of material support. *See* 18 U.S.C. § 2339A(b)(1) ("[T]he term 'material support or resources' means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials."). Thus, the Court should use the Government's proposal.

**D. Count 3 Instructions—"Not Necessarily the Defendant" (DE 1890:31-32, 45)**

Sanon objects to the instructions, used by the Court in the May 2026 trial and proposed here by the Government, which state: (a) "At least one conspirator—not necessarily the Defendant—was within the jurisdiction of the United States when the agreement to kidnap or kill was made;" and (b) "During the conspiracy, one of the conspirators—not necessarily the Defendant—knowingly committed one or more overt acts within the jurisdiction of the United States" (DE 1666:25-26; DE 1890:31-32). Sanon also objects to the same overt-acts element in the Count 8 instruction. The Court should adhere to its legally correct prior instructions.

As to Count 3, the Government proposed those instructions based on *United States v. Hassoun*, 476 F.3d 1181, 1187 (11th Cir. 2007), which cited *United States v. Wharton*, 320 F.3d 526, 537-38 (5th Cir. 2003), when analyzing the elements of 18 U.S.C. § 956(a). As *Wharton* laid out, the elements of § 956(a) are:

> (1) the defendant agreed with at least one person to commit murder [or kidnapping];
>
> (2) the defendant willfully joined the agreement with the intent to further its purpose;
>
> (3) during the existence of the conspiracy, one of the conspirators committed at least one overt act in furtherance of the object of the conspiracy; and
>
> (4) at least one of the conspirators was within the jurisdiction of the United States when the agreement was made.

320 F.3d at 538.

The disputed "not necessarily the Defendant" phrase flows directly from *Wharton* and other published precedents citing that decision. Since "at least one of the conspirators" must be "within the jurisdiction of the United States when the agreement was made," *id.*, it follows that the Defendant himself need not be in the United States at that time, as long as one of his conspirators is, *see* 18 U.S.C. § 956(a) ("Whoever, within the jurisdiction of the United States, conspires with one or more other persons, *regardless of where such other person or persons are located*, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping …" (emphasis added)).[2]

Similarly, § 956(a) requires only that "one of the conspirators committed at least one overt act." *Wharton*, 320 F.3d at 538. Thus, Sanon himself need not have performed any overt act to

[2] Although it does not affect the correctness of the instructions, the trial evidence has proven that Sanon was in the United States during the critical period—April to May 2021—when Sanon agreed with and recruited men like Arcangel Pretel Ortiz, Antonio Intriago, Walter Veintemilla, and James Solages to kidnap or kill President Moise and to install Sanon as Haiti's President.

be guilty of conspiracy, making the "not necessarily the Defendant" language a correct statement of law. Any defense argument to the contrary "misunderstands the nature of conspiracy liability. An individual conspirator need not participate in the overt act in furtherance of the conspiracy. Once a conspiracy is established, and an individual is linked to that conspiracy, an overt act committed by any conspirator is sufficient." *United States v. Isaacson*, 752 F.3d 1291, 1303 (11th Cir. 2014) (citation modified). For the same reason, this language also is appropriate as used in Count 8.

**E. Count 6 Instructions (DE 1890:38-39)**

Sanon objects to including the definitions of "military expedition or enterprise" and "friendly foreign nation" in the Count 6 instructions, although he does not object to the same language in Count 7. To the extent Sanon takes issue with repeating those definitions, the Court also repeated definitions of key terms in Counts 1 and 2 (for instance, "murder," "kidnapping," and "material support or resources") and Counts 4 and 5 (the equivalent 18 U.S.C. § 960 charges) during the May 2026 trial. And the proposed instructions include repetitions between Count 1 and 2, without defense objection. Because the instructions direct the jury to consider each count separately (DE 1890:58), it is appropriate to repeat those essential definitions for each charge.

**F. Defendants or Individuals Not on Trial (DE 1890:58)**

Finally, Sanon objects to the Government's proposal to instruct the jury that it "does not matter" whether "[s]ome of the people who may have been involved in these events are not on trial" because "[t]here is no requirement that all members of a conspiracy be charged and prosecuted, or tried together in one proceeding" (*id.*). But that instruction, which comes from the Sixth Circuit, is tailor-made for exactly this scenario: a lone defendant tried on a conspiracy charge, leaving the jury to speculate about what happened to their alleged co-conspirators. This concern is especially acute here because Sanon's cross-examinations, which have highlighted that former

co-defendants such as Arcangel Pretel Ortiz, Antonio Intriago, and Joseph Vincent were once government informants, may give rise to inaccurate jury speculation that those individuals went uncharged by virtue of their former status as informants. This instruction also helps Sanon because a jury might well speculate about persons not on trial in another way—inferring that the defendant must be guilty if his former associates, the cooperating witnesses testifying at his trial, pleaded guilty. *See, e.g.*, *United States v. Prange*, 771 F.3d 17, 31-32 (1st Cir. 2014) (concluding that trial court avoided any prejudice from jury learning about absent co-defendants or co-defendants who pleaded guilty when it instructed the jury that they should not "be concerned with the guilt of any other person or persons not on trial").

## II. The Court Should Reject Defendant Sanon's Proposed Instructions.

### A. Testimony of Accomplice, Informer, or Witness with Immunity (DE 1890:13)

This instruction, based on 11th Circuit Pattern Instruction S1.1, does not fit the facts of this case. The Government's proposed instructions already include 11th Circuit Pattern Instruction S1.2, which covers "Testimony of Accomplice or Codefendant with Plea Agreement." *See* (DE 1890:12). This trial includes testimony from the Defendant's former accomplices or codefendants, who have since agreed to cooperate with the Government pursuant to plea agreements, making S1.2 the proper instruction. In contrast, Instruction S1.1 is meant for cases in which the Government used a paid informant to investigate its case (for instance, by conducting controlled drug purchases in a 21 U.S.C. § 841 prosecution) or in which some witnesses received immunity. No witness in this case was either a paid informant or immunized by the Government. And the only language in S1.1 that is potentially pertinent—that some witnesses may "hope to gain more favorable treatment in their own cases"—is redundant of the Government's proposed S1.2: "[A] witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government" (DE 1890:12).

**B. Multiple Conspiracies (DE 1890:24, 35, 40, 49)**

A multiple-conspiracies instruction is proper only if "the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates a jury could reasonably conclude that some of the defendants were involved only in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Touray*, 151 F.4th 1317, 1331 (11th Cir. 2025). The Eleventh Circuit has stated that it "doubt[s]" that a multiple-conspiracies instruction "is ever appropriate where there is sufficient evidence to establish a defendant's membership in at least one conspiracy within the scope of the indictment." *United States v. Richardson*, 532 F.3d 1279, 1290 (11th Cir. 2008).

The Court correctly rejected this instruction in the May 2026 trial and should do so again. Indeed, the reasons for giving such a charge here are even weaker because only Sanon is on trial this time. "[I]t seems clear that" a multiple conspiracies "instruction is intended for use in cases charging *multiple* defendants with a single conspiracy," the only scenario in which it would be theoretically possible to have "a legitimate concern that a defendant who operated on the periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join." *Id.* at 1291 (emphasis in original). "The same cannot be said of cases, like this one, where the indictment charges"—or the trial concerns—"only one defendant who is at the hub of the conspiracy." *Id.*; *see also United States v. Corey*, 566 F.2d 429, 431 n.3 (2d Cir. 1977) ("[S]ingle/multiple conspiracy analysis does not apply to the trial of a single defendant.").

**C. Counts 1 & 2—Death Resulting Addition (DE 1890:25, 29)**

Sanon asks the Court to add the following language to the death-resulting instruction, not used in the May 2026 trial: "The death of President Moise must have resulted from acts within the scope of, and reasonably foreseeable to, the conspiracy the Defendant actually joined" (DE 1890:25, 29). That proposal improperly increases the Government's burden and inserts a

proximate-causation foreseeability requirement that courts, including the Supreme Court, have expressly declined to apply to analogous death-resulting enhancements.

*United States v. Burrage* clarified that the similar death-resulting enhancement in 21 U.S.C. § 841 requires but-for causation. 571 U.S. 204, 210-11, 218-19 (2014) (holding that the statutory language "results from" in 21 U.S.C. § 841, consistent with its ordinary meaning, requires proof of but-for causation). And the Eleventh Circuit has held that § 841's death-resulting enhancement does not require proximate causation or foreseeability: "the plain and unambiguous language of subsection 841(b)(1)(C) requires a but-for causation analysis that does not contain a foreseeability or proximate cause requirement." *United States v. Lebarron*, 178 F.4th 646, 659 (11th Cir. 2026). The Court should apply the same rule in light of the substantially similar language in 18 U.S.C. § 2339A ("if the death of any person results") and 21 U.S.C. § 841 ("if death or serious bodily injury results"). Neither requires foreseeability or proximate causation.

**CONCLUSION**

For the reasons above, the Court should use the Government's proposed jury instructions and reject Defendant Sanon's proposed jury instructions.

Respectfully submitted,

JASON REDING QUIÑONES
United States Attorney

By: *<u>/s Sean T. McLaughlin</u>*
Sean T. McLaughlin
Assistant United States Attorney
Court ID No. A5501121
11200 NW 20th Street, Suite 101
Miami, FL 33172
(305) 715-7642/7654
Sean.McLaughlin@usdoj.gov

<u>/s *Jason Wu*</u>
Jason Wu
Assistant United States Attorney
Court ID No. A5502299
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9226
Jason.Wu@usdoj.gov

*<u>/s Altanese Phenelus</u>*
Altanese Phenelus
Assistant United States Attorney
FL Bar No. 112693
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9375
Altanese.Phenelus@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I filed the foregoing document through CM/ECF and thus served all counsel of record.

/s *Jason Wu*
Jason Wu
Assistant United States Attorney