**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20104-BECERRA(s)(s)(s)(s)(s)(s)**

**UNITED STATES OF AMERICA**

**v.**

**CHRISTIAN SANON,**

**Defendant.**
____________________________________/

**GOVERNMENT'S MOTION TO EXCLUDE IMPROPER TESTIMONY**
**FROM PROFFERED EXPERT WITNESS THOMAS PULLEN**

On October 28, 2026, Defendant Christian Sanon provided the Government with Thomas Pullen's expert report. The report focuses on purported issues with several phones, primarily three belonging to Sanon, that U.S. law enforcement extracted and parsed in Haiti in July 2021. The Court should exclude the portion of that report—and any related testimony—that discusses wrongful convictions, the possibility of evidence being inadmissible due to chain-of-custody or forensic issues, or the suggestion that any deviation from digital forensic best practices could "jeopardize" an investigation. That testimony is inadmissible for two reasons. First, it violates Rule 702 because experts cannot assert or imply pure legal conclusions, such as opinions concerning the admissibility of evidence. The Court alone decides on the admissibility of evidence. And by casting doubt on those phones' admissibility, Mr. Pullen's "expert" opinion would contradict the Court's ruling admitting this digital evidence. Second, any testimony quoting or citing from articles about wrongful convictions or forensic practice mistakes is both irrelevant and highly prejudicial, and an obvious invitation for impermissible jury nullification. To be clear, the Government does not seek to preclude all of Mr. Pullen's testimony, only the portion described at pages 3 through 14 and its underlying source material.

## BACKGROUND

Mr. Pullen's expert report states that he will testify about the "recorded use, changes[,] and deletions during law enforcement custody" of several phones seized in Haiti and ultimately examined by U.S. law enforcement, with the consent of those devices' owners, in Haiti in July 2021 (Ex. A, at 1) (Thomas Pullen expert report). The devices in question are three phones belonging to Defendant Sanon, which correspond to Government Exhibits 114, 115, and 116, and two phones belonging to James Solages (Exhibit 117) and Joseph Vincent (Exhibit 119), respectively. The Government does not object to Mr. Pullen's qualifications, nor to him testifying about his opinions regarding those phones. While the Government disputes his ultimate conclusions, he is entitled to testify about his analysis of those device reports.

Between pages 3 and 14 of the report, Mr. Pullen cites and quotes several publications, some of them field guides or advisory bulletins for law enforcement personnel, which he claims "provide the technical context for the phone findings that follow" (Ex. A, at 3). In fact, however, the portions that he quotes do not describe technical matters concerning digital forensics but instead speak about the legal effect or impact of forensic issues in court proceedings. The quoted material states pure legal conclusions and improperly emphasizes the potential consequences of deviating from digital forensic best practices, such as:

- "[F]ailure to maintain proper documentation of evidence handling may result in evidence being inadmissible" (Ex. A, at 4) (from an article entitled, "Policing and Wrongful Convictions," attached as Exhibit B);
- "Failure to" take proper precautions when documenting, collecting, preserving, and examining digital evidence "may render it unusable, result in an inaccurate conclusion, or affect its admissibility or persuasiveness" (*id.*);

- "Law enforcement personnel must properly preserve digital evidence to make it suitable for presentation in court," and "lost evidence can place prosecutions in jeopardy" (*id.*); and
- "Failure to preserve evidence in its original state could jeopardize an entire investigation" (*id.*).

The Government filed an earlier motion to exclude Mr. Pullen's testimony for failure to disclose his expert report (DE 2184). This filing supplements and clarifies the relief that the Government seeks in light of Mr. Pullen's expert report.

## ARGUMENT

**The Court Should Exclude the Improper Legal Conclusions or Irrelevant and Prejudicial Insinuations Incorporated in Mr. Pullen's Expert Report.**

The Court should exclude the portion of Mr. Pullen's report, along with any corresponding testimony, laid out at pages 3 through 14. Although purporting to identify "technical" publications that lend "context" to his findings, Mr. Pullen's report cherry-picks quotations from various documents that discuss the legal consequences or admissibility issues that might arise from deviations from best practices. That testimony strays beyond Mr. Pullen's expertise and into territory that no expert may cover: legal conclusions and invitations for impermissible jury nullification. Thus, the Court should exclude that part of his proffered testimony.

**A. Experts Cannot Testify About Legal Conclusions, Such as Casting Doubt on the Admissibility of Evidence that the District Court Has Ruled Admissible.**

"[Q]uestions of law are not subject to expert testimony," and "experts may not testify to the legal implications of conduct or tell the jury what result to reach." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018) (internal quotation marks omitted); *see also United States v. Grzybowicz*, 747 F.3d 1296, 1310 (11th Cir. 2014) (same, in a criminal case). This fundamental limit makes good sense. "[M]any courts have excluded testimony when they determine that the witness is testifying to an area outside of—but related to—his expertise because

an expert witness must stay within the reasonable confines of his subject area." *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *11 (S.D. Fla. Feb. 24, 2010) (quotation marks omitted).

Mr. Pullen is a technical expert. His field is digital forensics, which qualifies him (at most) to describe the best practices for forensic preservation and his purported findings from examining digital forensic extractions or parsed reports. But like any other expert, Mr. Pullen "must stay within the reasonable confines of his subject area." *Id.* He is not a legal expert, and he should not and cannot opine about "the legal implications of conduct." *Grzybowicz*, 747 F.3d at 1310. Telling a jury that certain chain-of-custody or digital forensic practices could render evidence suspect or "inadmissible," "place prosecutions in jeopardy," or "jeopardize an entire investigation" (Ex. A, at 4) are not opinions that any Rule 702 expert witness may offer in court.

That testimony would contradict the Court's earlier rulings and the basic principle that decisions about evidentiary admissibility belong to the Court alone. Experts cannot testify about legal conclusions because "the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Nor can any witness, expert or lay, challenge a court's pretrial rulings concerning admissibility. "[W]hen a motion to suppress" or exclude evidence "is denied before trial, the legal basis of this denial becomes the law of the case for purposes of the trial, subject to appellate review, and the defendant may not re-litigate the suppression issue at trial." *United States v. Montos*, 421 F.2d 215, 220 (5th Cir. 1970)[1]; *see also United States v. Mastin*, 972 F.3d 1230, 1240 (11th Cir. 2020) (affirming a trial court's limitation on defense cross-examination because "[q]uestions such as whether the officers had a search

[1] Pre-October 1, 1981 Fifth Circuit decisions are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

warrant would have had little bearing" on relevant facts and instead "would have suggested that the officers had no authority to enter the hotel room—an issue of law that the district court had already decided against Mastin").

In moving to exclude the summary exhibit, Sanon and his former co-defendants challenged the admissibility of the phone extractions and parsings performed by U.S. law enforcement in Haiti. And this Court, after holding a February 9, 2026, pretrial evidentiary hearing (DE 1407), ruled that those phone reports were admissible at both the prior trial and the present trial. Indeed, the reports in question—Government Exhibits 114, 115, 116, 117, and 119—are already in evidence here. The Court rested its admissibility ruling on rock-solid legal and factual foundations. Both at the pretrial hearing and in subsequent trial testimony, digital forensic experts have confirmed that there were no material manipulations of the Haiti-extracted digital devices. *See* (DE 2178:43-44) ("Q. And pursuant to the timeline logs that you created for all of the L devices, that is the Haiti devices, did you see any evidence of material manipulation in your logs? A. No, I did not."). Thus, it would be improper for Mr. Pullen to insinuate, through his own testimony or by quoting third-party materials,[2] that those phones are so forensically compromised that they might be "inadmissible"—essentially, second-guessing or casting doubt on the Court's earlier rulings—or could "jeopardize [this] entire investigation" (Ex. A, at 4).

**B. The Proffered Testimony and Source Material Are Irrelevant and Prejudicial, and The Court Should Preclude Any Attempt To Invite Jury Nullification.**

Under Rules 401 and 403, testimony about the potential legal consequences of forensic shortcomings is irrelevant and highly prejudicial. The Court has ruled that the phones in question

---

[2] Federal Rule of Evidence 803(18), which allows an expert to read into the record "[s]tatements in learned treatises, periodicals, or pamphlets" about their technical subject matter, does not affect this argument. Rule 803(18) merely provides that such evidence does not constitute hearsay. The Government is not contending that these materials are hearsay but rather that they contravene Rule 702, the Court's own admissibility rulings, and (as described below) Rules 401 and 403.

are admissible. Thus, the fact that digital forensic issues might lead to suppression or exclusion in more extreme circumstances, under different facts, or in other cases has no bearing on this trial.

Such testimony would, however, encourage unlawful jury nullification. Jury nullification "verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power," *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998), and "district courts may constrain counsel from making arguments that encourage nullification," *United States v. Rushin,* 844 F.3d 933, 940 (11th Cir. 2016) (citation omitted). Allowing the defense to present the challenged testimony would invite the jury to speculate about whether this phone evidence should have been admitted (a distinct question from the weight to give that evidence, which the jury of course may consider).

The jury nullification risk becomes especially stark when one examines, for example, Mr. Pullen's quoted article about "Policing and Wrongful Convictions" (Ex. B). To start with, although archived on a government website, that article is not a treatise nor an official government statement. It is an academic piece written by several authors, including law enforcement officials and a longtime Executive Director of the Innocence Project, as part of the Harvard Kennedy School's Program in Criminal Justice Policy and Management. *See* (Ex. B, at 31) ("Findings and conclusions in this publication are those of the authors and do not necessarily reflect the official position or policies of the U.S. Department of Justice."). That article, which represents its authors' personal opinions, is a goldmine of prejudicial and irrelevant material, starting with its very first sentence: "[f]ew events subject the criminal justice system to as intense scrutiny . . . as the exoneration of a wrongfully convicted defendant" (*id.*). The Court should not permit a defense expert to read excerpts from an article about wrongful convictions, just as it would not allow a government witness to read from an article about the horrific tolls that violent crime inflicts upon

society—or, to be even more specific, any more than the Court would allow a Government witness to opine that the Defendant's and his co-conspirators' assassination of President Jovenel Moise has inflicted disastrous and enduring harms upon Haiti and its people.

## CONCLUSION

For the reasons above, the Court should exclude the portion of Mr. Pullen's testimony, along with the underlying source material and any testimony to the same effect, identified at page 3 through 14 of his expert report.

Respectfully submitted,

JASON REDING QUIÑONES
United States Attorney

By: */s Sean T. McLaughlin*
Sean T. McLaughlin
Assistant United States Attorney
Court ID No. A5501121
11200 NW 20th Street, Suite 101
Miami, FL 33172
(305) 715-7642/7654
Sean.McLaughlin@usdoj.gov

/s *Jason Wu*
Jason Wu
Assistant United States Attorney
Court ID No. A5502299
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9226
Jason.Wu@usdoj.gov

*/s Altanese Phenelus*
Altanese Phenelus
Assistant United States Attorney
FL Bar No. 112693
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9375
Altanese.Phenelus@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I filed the foregoing document through CM/ECF and thus served all counsel of record.

/s *Jason Wu*
Jason Wu
Assistant United States Attorney