UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20104-CR-BECERRA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTIAN SANON,

Defendant.
_______________________________________/

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE OR LIMIT EXPERT WITNESS TESTIMONY [DE 2184]**

Defendant Christian Sanon, through undersigned counsel, responds in opposition to the Government's Motion to Exclude or Limit Defendant Sanon's Proffered Expert Witness Testimony [DE 2184]. In support, Mr. Sanon states as follows:

**BACKGROUND**

On September 9, 2026 the Government filed its Second Updated Expert Disclosures and Demand for Defendant's Reports of Examinations, Tests, and Expert Disclosures [DE 1869]. On September 17, 2026, the defense moved to strike the Demand [DE 1876], on the ground that Mr. Sanon had never requested expert disclosure from the Government and was therefore under no reciprocal obligation to provide it. The Court ultimately ordered that the defense disclose expert witnesses they may call. The defense served the disclosure the Government attaches to its motion as Exhibit A [DE 2184-1], identifying Thomas Pullen, Jean Daniel Lafontant and Nicole Phillips, and furnishing the curriculum vitae of each. Mr. Sanon served his disclosure in compliance with the Court's directive, and not in concession that the Rule imposed any obligation upon him. He preserves that objection, and everything that follows is said subject to it.

On October 24, 2026, the Government filed the instant motion [DE 2184], asking the Court to exclude Mr. Lafontant, to limit Ms. Phillips, and either to exclude Mr. Pullen or to set a deadline of October 28, 2026 for an expert report. Defense provided Mr. Pullen's report to the Government on October 28, 2026.

## ARGUMENT

### I. Mr. Sanon Adopts the Prior Responses as to Mr. Lafontant and Ms. Phillips

Mr. Sanon adopts and incorporates by reference the responses filed on behalf of Mr. Pretel Ortiz [DE 1609] and [DE 1605] as though fully set forth herein. He preserves his objections in full, including his objection to the exclusion of Mr. Lafontant's testimony at the prior trial [DE 1625], and asks that any ruling the Court enters be entered on the record of this trial.

### II. Most of Mr. Pullen's Testimony Requires No Expert Designation

Footnote 2 of the motion resolves most of what the Government otherwise asks the Court to forbid. If Mr. Pullen is called to introduce items drawn from device extractions that the Government chose not to offer, the Government agrees the task is ministerial, that it requires no expert designation, and that it does not object, assuming the items are otherwise admissible. DE 2184 at 16 n.2. Mr. Sanon will call Mr. Pullen on that basis as to those items. No expert disclosure is owed, because Rule 16(b)(1)(C) reaches opinion testimony and not the authentication of records the Government produced.

### III. The Deletion Issue Arose From the Government's Own Witnesses

The Government says Mr. Pullen "is not responding to some new issue arising for the first time from this trial." DE 2184 at 16. The trial record says otherwise. The defense did not raise deletion. The Government developed it through five of its own witnesses on direct examination.

On October 6, 2026, Easton Schlueter was asked on direct examination what might explain a call log that "jumps from January 5 all the way to 7/9 with nothing in between." He answered: "Either the device wasn't in use or the records in between are deleted." DE 2118 at 53:13-16.

On October 14, 2026, the same day the disclosure was served, Michael Betancourt was asked on direct examination what a "yes" in the deleted column of a call log report tells the jury. He answered: "Someone deleted that call." DE 2161 at 100:22-101:1.

On October 15, 2026, Robert Herbster testified on direct examination that the longer the period that elapses, "the less likely you are to recover deleted items," and agreed with the Government's suggestion that this "might be a reason that we see deleteds here on the 7th, 8th, and 9th but not deleteds in May, April, June." DE 2162 at 32:9-14.

On October 16, 2026, Christopher Wallace was taken on direct examination to Government Exhibit 116B3, which he described as "an extraction report focusing on the contacts," and was asked what the red "yes" in the "deleted" column was "telling us." He answered: "That the file was deleted." DE 2163 at 53:12-17.

On October 19, 2026, the Government elicited testimony from Bryan Jordan on redirect examination for the express purpose of meeting the deletion issue. Counsel for the Government told the Court that deletion and manipulation were "issues that were raised by the defense ad nauseam during cross-examination," that the defense "inferred that people can virtually delete things, virtually add things," and that the Government was "entitled on redirect to show that we have done our due diligence." Trial Day 13 Tr. 58:7-14. Mr. Jordan then testified that "Cellebrite has designated that this was a deleted message," id. at 59:19-20, that as to a second device "the message may not have been deleted," because "[i]t could have only been deleted on one phone and not the other," id. at 61:6-10, and that a deleted call may still appear in a timeline log "if the item

was marked for deletion but had not yet actually been purged from the database." Id. at 63:23-64:5.

On October 21 and October 22, 2026, the Government elicited testimony from Kaitlin Dayton that a red X in its summary exhibits marks "a text that was deleted but when we extracted the phone we were able to recover it," and that the accompanying "scrambled" text "happens sometimes when you recover deleted messages." Trial Day 15 Tr. 40:21-25. Over objection, she testified that she found "other traces or signs of deleted messages in the defendant's phones." Id. at 41:9-14. She testified that Mr. Sanon himself deleted messages, id. at 164:1, 174:12, and that as to a call log entry, "the call was deleted from the log and we were able to recover it." Id. at 178:6.

The Government continues eliciting testimony about deletion with witnesses and has done so throughout their case in chief. The Government's complaint that Mr. Pullen had "years to examine the phones in question and formulate an opinion" mistakes the nature of the opinion. The phones were produced years ago. The contention that their contents were deliberately destroyed, and the inferences the Government asks the jury to draw from that contention, arrived in October 2026. A party cannot build a forensic theory in its case-in-chief and then fault its opponent for having failed to itemize a rebuttal before the theory existed.

## IV. The Government's Own Examiner Disclaimed the Expertise at Issue

Mr. Wallace's cross-examination demonstrates why Mr. Pullen's testimony is necessary rather than duplicative. Asked whether he could testify as to "the chain of custody of the phones," Mr. Wallace answered: "I cannot, no." DE 2163 at 79:25-80:5. Asked whether either party to a WhatsApp chat can delete the messages, he answered that "from a forensic perspective, my information is several years out-of-date, so I'm no longer really certain." Id. at 80:9-13. Asked whether he considered himself an expert in applications such as WhatsApp, he answered: "I'm not

the one who would label myself as an expert. That's not for me to judge." Id. at 80:18-22. Asked what a modified date represented, he answered that "created, modified, accessed, deleted dates can be very specific, and I no longer have the expertise to get into the details of it." Id. at 86:9-13.

Mr. Wallace also conceded the premise on which Mr. Pullen's first opinion rests. Shown Row 11573 of the same contact list, where the "deleted" column read "yes" in red, he confirmed that the telephone number recorded there, ending 5605, appeared again at Rows 11571 and 11572 of the same report. Id. at 86:14-87:22. He agreed that it is "possible to delete a number not for the purpose of deleting it off your phone, for the purposes of putting it under a different file in your phone." Id. at 87:23-88:11. And asked who had the telephone on the date the surviving entry was modified, he answered: "I don't know." Id. at 88:12-15.

The Government's own witnesses have also supplied the distinction on which Mr. Pullen's first opinion rests. Mr. Jordan testified that an item may appear in a log where it was "marked for deletion but had not yet actually been purged from the database," Trial Day 13 Tr. 63:23-64:5. Ms. Dayton, asked on cross-examination whether she could say who deleted a message, answered only that the notation reads "You deleted this message," meaning "the owner of the phone." Trial Day 16 Tr. 66:13-17. The Government therefore does not dispute that a deletion marker may reflect something other than destruction by the user of the device. It disputes only whether the defense may call a witness to explain that to the jury. Counsel for Mr. Sanon objected when Ms. Dayton was asked to testify about signs of deletion on the ground that she was not qualified to do so. Trial Day 15 Tr. 41:13-14. The Government's position is that its summary witness may give that testimony and that Mr. Pullen may not.

Bryan Jordan testified that "he found no evidence of material manipulation". Trial Day 12 Tr. 61:2-5. Mr. Pullen's testimony remains useful even if the jury accepts the government

examiner's conclusion that he found no material manipulation. Pullen would explain the separate questions of preservation, completeness and deletion attribution, applying his disclosed analysis to the records from these devices.

The Government elicited testimony that data was deleted from the devices in evidence, and its witness then disclaimed the competence to say what the deletion record means, how a deletion is distinguished from a re-filing or an artifact of parsing, or who held the device and when. To exclude Mr. Pullen is to leave that inference standing with no witness on either side able to test it. That is not a result Rule 702 or Rule 16 contemplates.

**V. Mr. Pullen's Opinions, Bases and Methodology**

To remove any question of notice, Mr. Sanon states Mr. Pullen's opinions here. This response is served and filed as his disclosure, and no separate paper is necessary.

Mr. Pullen is a forensic examiner of electronic items, including cellular telephones, tablets, media storage, laptops and desktop computers, and is familiar with the software the Government used to extract and parse the devices in this case. His curriculum vitae was furnished on October 14, 2026. He has examined the device extractions furnished to the defense, including the extractions of the telephones attributed to Mr. Sanon, and the Government exhibits drawn from them.

Mr. Pullen will offer three opinions. First, what the extraction records establish, and do not establish, about the deletion of data from the devices in evidence, including the circumstances in which the software reports an item as deleted although the item was re-filed or relocated rather than destroyed, and why a gap in a log is not itself evidence of deletion. Second, what those records establish about whether a message was delivered, read or opened, and, as to a message carrying a video or other attachment, whether the attachment was downloaded to the device and whether it

was ever opened or played. Third, what the records show, and do not show, about the handling of the devices between seizure and extraction.

The bases for those opinions are the extraction reports and the underlying application and database records within them. His methodology is the examination of that data using the same class of forensic tools the Government's examiners used.

**VI. Exclusion Is Not the Appropriate Remedy**

The sanction the Government seeks presupposes a duty that never attached. Rule 16(b)(1)(C) imposed no disclosure obligation on Mr. Sanon, and a rule that required nothing of him cannot have been violated by him. But even measuring the disclosure against the Rule as though it applied, exclusion is not the remedy.

Rule 16(d)(2) affords the Court four options where a party has failed to comply with Rule 16. The Court "may (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). Exclusion is one of the four and the gravest. The Government alleges no bad faith, identifies no surprise as to the witness's identity or field, and describes no prejudice that a written statement of the opinions will not cure.

The Government also asks for relief the Rule does not contemplate. Rule 16(b)(1)(C) requires a written disclosure by the defendant, not a report authored by the witness. The Rule provides that "[t]he disclosure for each expert witness must contain" a "complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," the "bases and reasons for them," the witness's qualifications, and a list of the other cases in which the witness has testified as an expert in the previous four years. Fed. R. Crim. P. 16(b)(1)(C)(iii). The word

"report" appears in the subdivision only in reference to a report already furnished under Rule 16(b)(1)(B), concerning the results of physical or mental examinations and scientific tests. Nothing in the Rule obliges a defense expert to author one, and the Court should not order the production of a document the Rule does not require.

No deadline is needed, because the disclosure has now been made. Section V above sets out Mr. Pullen's opinions, the facts and data on which they rest, his methodology and his qualifications. The Government has what it says it lacks, and it has it before Mr. Sanon has opened his case. The Government's deletion proof continued to develop through the second and third weeks of October, after the disclosure had been served.

**VII. Prior Testimony and Fees**

The Government asks the Court to order disclosure of Mr. Lafontant's and Ms. Phillips's expert testimony over the past four years and the amount of their fees. Mr. Sanon does not oppose providing, as to each witness actually called, a list of the cases in which that witness has testified as an expert within the preceding four years, to the extent that information is within counsel's possession, and the compensation the witness is to be paid in this case, on the same terms the Government supplies that information as to its own witnesses under Rule 16(a)(1)(G)(iii).

**CONCLUSION**

The Government asks the Court to exclude a witness for saying too little about a subject the Government itself placed in issue after the disclosure was served, and concedes in the same motion that most of what the witness will do requires no disclosure at all. The opinions are stated above. Rule 16 required none of this of Mr. Sanon, and nothing in the record warrants the exclusion of his witness.

WHEREFORE, the Defendant, CHRISTIAN SANON, respectfully requests that this Honorable Court deny the Government's Motion to Exclude or Limit Defendant Sanon's Proffered Expert Witness Testimony, permit Mr. Pullen to introduce items from the device extractions as the Government has agreed and decline to exclude Mr. Pullen as an expert.

Respectfully submitted,

BOZANIC LAW, P.A.
101 NE 3rd Avenue
Suite 1500
Ft. Lauderdale, FL 33301
Telephone: 954.920.9750
E-Mail: info@bozaniclaw.com

/s/Zeljka Bozanic
By:________________________________
Zeljka Bozanic
Florida Bar No. 23707

HUMBERTO R. DOMINGUEZ, P.A.
9100 S. Dadeland Blvd.
Suite 1500
Miami, FL 33156
Telephone: 305.373.6400
E-Mail: bert@hdominguezlaw.com

/s/Humberto R. Dominguez
By:________________________________
Humberto R. Dominguez
Florida Bar No. 837903

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY certify that on October 31, 2026, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

/s/Zeljka Bozanic
By:________________________________
Zeljka Bozanic
Florida Bar No. 23707