UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20104-CR-BECERRA

**UNITED STATES OF AMERICA,**

**v.**

**CHRISTIAN SANON,**

**Defendant.**
_________________________________/

**DEFENDANT CHRISTIAN SANON'S TRIAL MEMORANDUM**
**CONCERNING PROPOSED JURY INSTRUCTIONS**

Defendant Christian Sanon, through undersigned counsel, files this trial memorandum concerning the parties' proposed jury instructions [DE 1890] and in response to the United States' Trial Memorandum Concerning Proposed Jury Instructions [DE 2204]. In support, Mr. Sanon states as follows:

## BACKGROUND

The grand jury returned the Sixth Superseding Indictment on August 27, 2026. [DE 1850]. On September 11, 2026, the parties filed their joint proposed jury instructions. [DE 1871]. Those instructions were drawn against the prior charging document, the Fifth Superseding Indictment. Mr. Sanon was arraigned on the Sixth Superseding Indictment on September 21, 2026. That same day, the Government filed revised proposed instructions, styled as the parties' revised instructions and described as updated to reflect the Sixth Superseding Indictment. [DE 1890].

The revisions in DE 1890 did not include Mr. Sanon's proposals relating to the Sixth Superseding Indictment and are word for word the proposals he made on September 11 against the

Fifth Superseding Indictment. The Government filed its memorandum on October 30, 2026. [DE 2204].

## ARGUMENT

### I. The Material Support Definition Exceeds the Charge

The grand jury did not charge material support in the abstract. It alleged "material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1)-(3), that is, property, services, financial services, lodging, training, expert advice and assistance, safehouses, false documentation and identification, communications equipment, facilities, weapons, lethal substances, personnel including themselves, and transportation." The Government's instruction abandons that specification and reads the jury the full statutory list, adding three categories not contained in the Indictment: property "tangible or intangible"; "currency or monetary instruments or financial securities"; and "explosives." DE 1890 at 21-22, 26-27. The Government has told the Court it intends to prove "financial fundraising, mostly from recipients of pandemic-era government loans," DE 2204 at 4, which is a theory of currency and monetary instruments and the one category the grand jury omitted.

A constructive amendment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013). In *Madden*, The Eleventh Circuit held that "a court errs when it allows for an alternative method of conviction that is not included in the indictment." *Madden*, 733 F.3d at 1322. Mr. Sanon has withdrawn his earlier proposal drawn from the Fifth Superseding Indictment, DE 2204 at 3, and asks instead for the definition the Sixth Superseding Indictment supplies, verbatim.

## II. The Pattern Instruction O2 Definition Does Not Fit

The September 21 revisions added to Counts 1 and 2 the conceal-or-disguise theory, the escape-concealment clause, and a definition of "conceal" borrowed from Pattern Instruction O2. DE 1890 at 20-23, 26-28. Mr. Sanon does not object to the first two. The grand jury charged both: an agreement "to provide, and conceal and disguise the nature, location, source, and ownership of, material support and resources," to be used "in preparation for, in carrying out, and the concealment of an escape from the commission of a violation of Title 18, United States Code, Section 956(a)(1)." He reserves only the right to ask at the charge conference that the escape-concealment clause not be given if the evidence does not support it.

The definition is a different matter. Pattern Instruction O2 is the instruction for concealing property belonging to the estate of a bankruptcy debtor, and the thing concealed there is property. Under Section 2339A what is concealed or disguised is the nature, location, source or ownership of material support - its attributes, not the support itself.

## III. Count 1 Should Read "Willfully Joined"

The Government opposes Mr. Sanon's proposal that the Second Element of Count 1 read that the Defendant "knew the unlawful purpose of the plan and willfully joined in it," arguing that "voluntarily joined" better tracks a statute that "does not contain the word 'willful,'' that the word is redundant of the clause that follows, and that the defense proposal is "unnecessarily complicated." DE 2204 at 2-3. The proposed charge answers the argument twice over. The Third Element of Count 3, which the Government proposed, and to which Mr. Sanon does not object, reads: "The Defendant knew the unlawful purpose of the plan and willfully joined in it." DE 1890 at 31. And the Count 1 instruction itself, two paragraphs after the element in dispute, tells the jury that a defendant who "played only a minor part in the plan" is nevertheless guilty if he "willfully

joined in the plan on at least one occasion." DE 1890 at 22. The word is therefore already in the charge, in the Government's own language, on both the count in dispute and the count that is not.

The Government's own authority uses it as well. For the elements of Section 956(a) the Government relies on *United States v. Wharton*, 320 F.3d 526, 537-38 (5th Cir. 2003), DE 2204 at 5, whose second element is that "the defendant willfully joined the agreement with the intent to further its purpose." DE 2204 at 5 (quoting *Wharton*). If "willfully joined" is unnecessarily complicated, it is the Government's authority and the Government's own instructions that are complicated. Mr. Sanon asks that the two counts be phrased alike, in the words the Government has already used.

## IV. Counts 3, 6 and 7 Omit Statutory Language

Section 956(a)(1) reaches a conspiracy to commit outside the United States an act that would constitute murder, kidnapping or maiming "if committed in the special maritime and territorial jurisdiction of the United States," and the Count 3 is charged in those words. The instruction instead says "within the jurisdiction of the United States." DE 1890 at 31. Relatedly, Counts 1 and 2 require the jury to find that support was to be used to carry out "a violation of Title 18, United States Code, Section 956(a)," DE 1890 at 20-21, 26, yet the charge never tells the jury what Section 956(a) requires, omitting both of the statute's limiting requirements. Pattern Instruction O91.1 calls for a summary of the predicate prohibition.

Section 960 punishes a person who, "within the United States," takes part in a military expedition "to be carried on from thence" against a foreign state with which the United States is at peace, and the Indictment charged Counts 6 and 7 in those terms. The Government's elements move that requirement out of the elements and into the definitional paragraphs that follow. DE 1890 at 37, 42. The Government correctly notes that Mr. Sanon objected to the definitions in Count

6 and not in Count 7, DE 2204 at 6. The correction was made and Mr. Sanon objects on both counts. The substance of the objection is that those paragraphs are broader than the statute and rest on no identified authority: among other things, that an expedition is carried on from the United States if "part of the planning, organization, or funding" occurred here, that a combination "intended to be organized and armed" suffices, and that the attack need not have been "fully planned or completed." DE 1890 at 38-39, 42-43. Each lowers the Government's burden. Mr. Sanon asks that authority be identified for each before it is read, that the phrase "to be carried on from the United States" appear in the elements of both counts, and that the Government identify the source of the quoted phrase "open and notorious."

The definition the Government proposes has no source, and there is a controlling one. The Supreme Court construed the term in *Wiborg v. United States*, 163 U.S. 632, 650 (1896): a military expedition is "a journey or voyage by a company or body of persons, having the position or character of soldiers, for a specific warlike purpose; also the body and its outfit." That definition is still the one courts apply. See *United States v. Jack*, 2010 U.S. Dist. LEXIS 121209 (E.D. Cal. Nov. 12, 2010) (applying *Wiborg* and defining a "soldier" as a person engaged in military service as a member of an organized body of combatants). The Government's instruction departs from it three times. *Wiborg* requires a journey or voyage by a body of persons who go; the proposed instruction requires no movement at all and reaches "any combination of people." *Wiborg* requires persons having the position or character of soldiers; the proposed instruction states only what is not required, that no formal military body or training is necessary, which erases the requirement rather than explaining it. And *Wiborg* requires a specific warlike purpose; the proposed instruction drops "specific" and then adds persons "intended to be organized and armed," which reaches a

group never organized or armed at all. The instructions submitted with this memorandum propose the *Wiborg* definition in both counts.

## V. The Export Instructions Depart From the Indictment

On the receiving and concealing prong, Section 554(a) requires knowledge that the merchandise was "intended for exportation contrary to any law or regulation of the United States," while the first element stops at "knowing the same to be intended for exportation." DE 1890 at 51.

The second element of Count 9 identifies the law contravened as Title 13, United States Code, Section 305, DE 1890 at 51, which is a penalty provision. The indictment cites Title 13 and Title 15, Code of Federal Regulations, Part 30.

The same omission appears in the Count 8 instruction, where the Section 554 offense is described as the first object of the conspiracy. There the element stops at "prior to exportation," omitting the knowledge clause altogether. DE 1890 at 48.

The indictment charges a failure to file "through the Automated Export System." The instructions tell the jury, as the second object of the Count 8 conspiracy, that the Defendant "failed to file export information through the Shippers Export Declaration ('SED') (or any successor document) or the Automated Export System ('AES')," DE 1890 at 48; repeat that same sentence as the predicate for the second element of Count 9, DE 1890 at 53; open Count 10 by stating that Section 305 "makes it a crime to knowingly fail to file export information to the U.S. Government through the Shippers Export Declaration, or any successor document, including the Electronic Export Information ('EEI'), or the Automated Export System," DE 1890 at 54; and then state the first element of Count 10 as a failure to file "through the Electronic Export Information ('EEI') or the Automated Export System," DE 1890 at 54. Count 10 thus contradicts itself on the same page: its opening paragraph names the Shippers Export Declaration and its first element does not.

The surplus is not harmless. The Shippers Export Declaration is the paper form that electronic filing through the Automated Export System replaced, and the Electronic Export Information is the data set filed through that system. Giving the jury three labels for one obligation, two of which are not charged in the Indictment, together with the phrase "or any successor document," permits conviction on a failure to file something the Indictment never identified. One element should be stated one way, in each of the four places, and it should be the Automated Export System, as charged in the Indictment.

The filing-threshold instruction is also incorrect. The Government would tell the jury that export information must be filed "when the value of the commodities shipped is greater than $2,500 or an export license is required." DE 1890 at 54. The regulation measures the threshold per classification code, not by the aggregate value of a shipment: filing is not required where the value shipped "from one USPPI to one ultimate consignee on a single exporting conveyance classified under an individual Schedule B number or HTSUSA commodity classification code is $2,500 or less." 15 C.F.R. § 30.37(a). Finally, nothing tells the jury who bore the duty to file. On a count whose theory is an omission, the jury should be instructed on the duty and on whom the regulations place it.

## VI. The Death-Resulting Instruction Requires a Scope Limit

The Government answers this proposal with *Burrage v. United States*, 571 U.S. 204, 210-11, 218-19 (2014), and *United States v. Lebarron*, 178 F.4th 646, 659 (11th Cir. 2026), for the proposition that the analogous enhancement in Section 841 requires but-for causation and "does not contain a foreseeability or proximate cause requirement." DE 2204 at 8-9. Causation asks how tightly the death must be linked to the acts. Mr. Sanon's concern is whose acts the jury may count. The instruction asks whether President Moise died "as a result of acts committed in furtherance of

the Count 1 conspiracy," DE 1890 at 25, a conspiracy charged to run from in or around June 2020 through on or about July 31, 2021 among more than twenty alleged coconspirators across four countries, [DE 1850], Count 1 ¶ 2, while the charge elsewhere permits conviction of a defendant who "played only a minor part in the plan" and "willfully joined in the plan on at least one (1) occasion." DE 1890 at 21. Mr. Sanon asks that the limitation sit in the operative clause, so that the instruction reads that the Government must prove "that but for the acts committed in furtherance of the Count 1 conspiracy, President Moise would not have died, and that the death resulted from acts within the scope of the conspiracy the Defendant joined," with the parallel sentence given for Count 2. That formulation preserves the Government's but-for language word for word and says nothing of proximate cause or foreseeability.

## VII. The Pinkerton Instruction Should Not Be Given

The proposed charge instructs the jury three times that it may convict Mr. Sanon of a substantive offense he did not commit. DE 1890 at 30, 44, 55 (and nn. 6, 11, 14). Each time it requires three findings: that a conspirator committed the crime to further the conspiracy's purpose, that Mr. Sanon was a knowing and willful member of the conspiracy when the crime was committed, and that the crime was reasonably foreseeable. It never asks the jury whether the crime fell within the scope of the agreement Mr. Sanon joined.

Mr. Sanon objects to that omission. Coconspirator liability does not reach a substantive crime that "did not fall within the scope of the unlawful project." *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996). And this Circuit, sitting en banc, extended Pinkerton to "reasonably foreseeable but originally unintended substantive crimes" only while cautioning that it was "mindful of the potential due process limitations on the Pinkerton doctrine in cases involving attenuated relationships between the conspirator and the substantive crime." *United States v.*

*Alvarez*, 755 F.2d 830, 850-51 (11th Cir. 1985) (en banc). This is such a case. The Government's own theory in the first trial was that the men who organized the operation abandoned Mr. Sanon in June of 2021 and killed President Moise in July without him. Applied to Count 2, the instruction would convict him of an offense resulting in death on the acts of the very men the evidence will show excluded him.

The charge compounds the problem. Two paragraphs before the Count 1 elements, the jury is told that a defendant who "played only a minor part in the plan" and "willfully joined in the plan on at least one (1) occasion" is a conspirator. DE 1890 at 22. Read with the coconspirator instruction, a juror may convict Mr. Sanon of a death-resulting offense on a minor part plus foreseeability, with nothing in the charge directing attention to the scope of the agreement he actually made.

The Court stated in its trial order that it "intends to model the jury instructions to align with those of the co-defendants unless the evidence in this case requires a change." DE 1824 at 2, quoted at DE 1890 at 4 n.1. The Court's final charge in the first trial, which is on this docket, contains no coconspirator liability instruction at all. [DE 1666]. The Court did not give it to a jury trying four defendants, and the Government has not identified what in the evidence of this one-defendant trial requires it now. Mr. Sanon asks that the instruction not be given in any of the three places. If it is given, Mr. Sanon objects, and asks that a fourth finding be added in each — that the crime fell within the scope of the conspiracy the Defendant actually joined — as set out in the instructions submitted with this memorandum.

## VIII. Pattern Instruction O13.4 Should Be Given as Written

The proposed charge gives the withdrawal instruction three times, for Counts 3, 6 and 8, in a modified form. DE 1890 at 36, 41, 50. Mr. Sanon asks for the instruction. He objects only to what the Government has added to it.

Pattern Instruction O13.4 ends where the Committee ended it: "But to find that a Defendant withdrew from a conspiracy, you must find that the Defendant took action to disavow or defeat the purpose of the conspiracy before any member of the conspiracy committed any overt act." The Government's version continues, requiring the jury also to find that "the Defendant either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities," and adding that "[a] mere cessation of activity in the conspiracy is not sufficient to establish withdrawal." DE 1890 at 36, 41, 50. That language is not in the instruction. It is in the Committee's annotations, where it describes the standard an appellate court applies in deciding whether the evidence was sufficient to establish withdrawal. The Committee had the formulation in front of it and placed it in the commentary rather than in the charge. Reading commentary to a jury as though it were an element is a departure from the pattern.

A sufficiency standard tells a reviewing court how much proof is enough. The same words, given to a jury as "you must find," tell it that unless Mr. Sanon communicated a disavowal to his co-conspirators or went to law enforcement, he never withdrew. The evidence in this case is that the men who organized the operation cut Mr. Sanon out of it, that by June of 2021 they had written that he won't be able to participate in anything, and by July that they were "not even talking to him anymore." A defendant whose co-conspirators have stopped speaking to him cannot communicate with them in a manner reasonably calculated to reach them. As modified, the instruction turns their act of exclusion into proof of his continued membership. A defendant is

entitled to have the jury instructed on a defense when there is some evidence to support it, *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995), and an instruction that states the defense in terms the evidence cannot satisfy is the practical equivalent of refusing it.

One further matter follows from the Committee's annotations. The annotation to O13.4 states that withdrawal is available where a defendant "raises withdrawal as a defense to Pinkerton liability, in which case withdrawal is a defense to subsequent criminal conduct of the defendant's co-conspirators," citing *United States v. Alvarez*, 755 F.2d 830 (11th Cir. 1985) (en banc). The proposed charge gives the coconspirator liability instruction for Counts 1 and 2, DE 1890 at 30, but gives no withdrawal instruction anywhere in Counts 1 and 2, and Count 1 contains no overt-act element. The result is that on the two counts carrying a death-resulting finding, the jury is told it may convict Mr. Sanon of a crime he did not commit and is told nothing about withdrawal. If the Court gives the coconspirator instruction over Mr. Sanon's objection, he asks that the withdrawal instruction be given with it and keyed to the date of the coconspirator's crime rather than to the first overt act of the conspiracy.

## IX. The Court's Own Language on Others Should Be Used

The Government proposes to tell the jury three times, in the middle of Pattern Instruction B10.2, that the absence of other participants "does not matter." DE 1890 at 58. The paragraphs are not an Eleventh Circuit pattern instruction; the Government footnotes them to the Sixth Circuit's pattern instruction, DE 1890 at 58 n.15, and says the same in its memorandum, DE 2204 at 6. The Court has already charged a jury in this case on this subject, in the Eleventh Circuit pattern's own words: "Keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge." [DE 1666]. That language answers the jury's curiosity without three times instructing it

that the absence of the men who carried out the killing is immaterial. The Government also defends its version on the ground that it "also helps Sanon." DE 2204 at 7. Whether an instruction helps the defendant is a judgment for the defendant, and Mr. Sanon has made it. Mr. Sanon objects to both Sixth Circuit paragraphs in their entirety and asks that neither be given, and that the Court instead give the Eleventh Circuit pattern language it gave in the first trial, which is set out in bold italics in the instructions submitted with this memorandum.

The Government's own authority points the same way. It cites *United States v. Prange*, 771 F.3d 17, 31-32 (1st Cir. 2014), for the proposition that a trial court avoided prejudice from the jury learning of absent or pleading codefendants. DE 2204 at 7. The instruction approved there told the jury not to "be concerned with the guilt of any other person or persons not on trial." DE 2204 at 7 (quoting *Prange*). That is the Eleventh Circuit's language and this Court's language, not the Sixth Circuit paragraphs the Government proposes. *Prange* supports giving the pattern instruction; it does not support telling the jury three times that the absence of the men who carried out the killing "does not matter."

## X. Remaining Objections Are Preserved

Mr. Sanon preserves the following without further argument: his objection to the phrase "not necessarily the Defendant" in the jurisdictional and overt-act elements of Counts 3, 6 and 8, acknowledging that the Sixth Superseding Indictment itself charges Count 3 as a conspiracy "at least one of whom having been within the jurisdiction of the United States," [DE 1850], Count 3 ¶ 2; and his request for an instruction that the agreement the jury finds on a given count must be the agreement that count charges, the Sixth Superseding Indictment charging four conspiracies with different periods, objects and participants.

Two housekeeping matters: the Government's footnote to the withdrawal instruction states that it "applies only to Counts 3, 4, and 6," DE 1890 at 50, though Count 4 is not before the jury and the conspiracy counts requiring an overt act are Counts 3, 6 and 8; and the verdict form and the charge should ask the death question in the same words, the form asking whether "the Count 1 offense" and "the Count 2 offense" resulted in death, DE 1890 at 61-62, and the instructions asking whether death resulted from "acts committed in furtherance of" the charged conspiracy, DE 1890 at 25, 29.

WHEREFORE, Mr. Sanon respectfully requests that the Court decline to give the Government's proposed instructions on the points identified above, give the instructions submitted with this memorandum, and grant such further relief as the Court deems just and proper.

BOZANIC LAW, P.A.
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, FL 33301
Telephone: 954.920.9750
info@bozaniclaw.com

/s/ Zeljka Bozanic
By:______________________
Zeljka Bozanic
Florida Bar No. 23707

HUMBERTO R. DOMINGUEZ, P.A.
9100 S. Dadeland Blvd., Suite 1500
Miami, FL 33156
Telephone: 305.373.6400
bert@hdominguezlaw.com

/s/ Humberto R. Dominguez
By:______________________
Humberto R. Dominguez
Florida Bar No. 837903

**CERTIFICATE OF SERVICE**

I HEREBY certify that on November 8, 2026, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

/s/ Zeljka Bozanic
Zeljka Bozanic